UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY DAVIS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:08-cv-270-WTL-TAB |
| ) | |
| KRIS OCKOMON, et al., ) | |
| ) | |
| Defendants. ) | |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment (Docket No. 27) and the Plaintiff's cross-motion for summary judgment (Docket No. 31). The motions are fully briefed, and the Court being duly advised, **GRANTS** the Defendants' motion and **DENIES** the Plaintiff's motion with regard to the Plaintiff's federal claim and **DISMISSES WITHOUT PREJUDICE** the Plaintiff's state law claim for the reasons set forth below.

### I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must

affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Medical Center of Illinois v. American Medical Security, Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Indiana Symphony Society*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to

judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II. BACKGROUND

Plaintiff, Larry Davis, was the Senior Humane Officer[1] of the City of Anderson from 1988 until 2007. Davis was appointed as Senior Humane Officer after actively working on Democrat Mark Lawler's mayoral campaign. When Lawler was elected, he appointed Davis Senior Humane Officer even though Davis had no experience in animal control. As a result of Davis's appointment, Lawler was sued by the incumbent Senior Humane Officer, Pam Marshall. That case was settled out of court. After ascending to the position, Davis continued as Senior Humane Officer during each of Lawler's four terms as Mayor.

In 2003, Lawler decided not to run for re-election and Kevin Smith, a Republican, was elected mayor. Smith took office on January 1, 2004, and although his transition team considered replacing Davis, he was ultimately retained as Senior Humane Officer. This appears to have been at least in part because Smith's team believed that the Senior Humane Officer was not a position that could be replaced based on party affiliation. During Smith's administration, control of the animal shelter was transferred from the Animal Control Commission to the Board of Public Safety. This change in no way affected the powers or duties of the Senior Humane Officer.

---

[1] The parties refer to Davis as both the Senior Humane Officer and the Director of the Animal Shelter. Although the terms are used interchangeably by the parties, for clarity the Court shall refer to Davis as the "Senior Humane Officer."

During the 2007 mayoral campaign, Davis supported Smith, instead of the Democratic candidate, Defendant Kris Ockomon.  Ockomon's campaign platform included a promise that if elected, he would fire Davis.  Ockomon was elected in November 2007 and promptly made good on his campaign promise, terminating Davis as of January 1, 2008.  Ockomon's decision was based on his belief that Davis occupied an exempt policymaking position, which Ockomon could fill with a member of his "own team."

Even though Davis's termination took effect on January 1, 2008, he went into work on January 1 and January 2 to conduct an inventory of the narcotics used in euthanasia.  Davis needed to complete this inventory because neither his replacement as Senior Humane Officer, Larry Russell, nor the newly appointed Deputy Chief Humane Officer, John Cox, was certified to use controlled substances.  In addition, neither Russell nor Cox had any experience in animal control, and their tenure over the animal shelter was fraught with negative publicity.[2]

As a result of his termination, Davis commenced this litigation by filing a two-count Complaint alleging violation of his First Amendment rights and violation of the Indiana Wage Payment Statute.

### III.  DISCUSSION

In *Elrod v. Burns*, 427 U.S. 347, 360 (1976), the United States Supreme Court held that patronage dismissals infringe First Amendment interests but that First Amendment rights can be limited or restrained for appropriate reasons.  The *Elrod* Court noted that although political

---

[2] Russell was almost instantly unpopular because he euthanized between thirty and forty animals during his first week at the shelter.  Then, he accidentally euthanized an animal that was supposed to be rescued.  After the second incident Russell resigned and Cox was placed on administrative leave.

4

loyalty is important in a representative government, this goal did not justify "validat[ing] patronage wholesale." *Id.* at 367.  The Court struck a balance and "[l]imit[ed] patronage dismissals to policymaking positions." *Id*.  However, the Court struggled to define "policymaking positions."  It noted that "no clear line can be drawn between policymaking and nonpolicymaking positions." *Id.*  The Court provided little guidance other than noting that policymaking positions were those with broadly defined responsibilities and stating that "consideration would also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id*. at 368.  *Elrod* now stands for the proposition that "party affiliation may be an acceptable requirement for some types of government employment." *Branti v. Finkel*, 445 U.S. 507, 517 (1980).  "Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency." *Id*.

      In *Branti* the Court noted that it is difficult to determine "whether a position is one in which political affiliation is a legitimate factor to be considered." *Id.* at 518 (citation omitted).  "Under some circumstances, a position may be appropriately considered political even though it is neither confidential nor policymaking in character." *Id.*  In addition, "party affiliation is not necessarily relevant to every policymaking or confidential position." *Id*.  "On the other hand . . . the Governor of a State may appropriately believe that the official duties of various assistants who help him write speeches, explain his views to the press, or communicate with the legislature cannot be performed effectively unless those persons share his political beliefs and party commitments." *Id.*  Accordingly, "the ultimate inquiry is not whether the label 'policymaker' or

5

'confidential' fits a particular person; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.*

Ten years later, in *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Court again dealt with the First Amendment implications of political patronage. The Court stated that *Elrod* and *Branti* "decided that the First Amendment forbids government officials to discharge or threaten to discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved." *Id.* at 64. However, *Rutan* did nothing to clarify the meaning of either "policymaker" or "confidential."

In 2005, the Seventh Circuit's *Riley v. Blagojevich*, 425 F.3d 357 (7th Cir. 2005), *cert. denied*, 547 U.S. 1071 (2006), decision provided more concrete guidance. After referencing both *Elrod* and *Branti*, the Seventh Circuit noted, "[i]n general, employees who have merely ministerial duties – who really have very little discretion – and employees whose discretion is channeled by professional rather than political norms . . . are not within the exception for policymakers." *Id.* at 360. However, "the line between professional and policy judgment is often blurred . . . [a]nd an administrator will often exercise both professional and broader policy responsibilities." *Id.* The court noted the "dilemma" faced by elected officials and decided that "if no basis is presented for thinking the official job descriptions systemically unreliable . . . the elected officials can rely on them, even if a plaintiff is prepared to testify (self-servingly) that the job description doesn't actually describe what he does." *Id.* The court focused on the "'inherent powers' of the office, not what any individual officeholder actually does," *id.* at 360-61 (citation omitted), because "[t]he idea that job performance (rather than job description) should control

*Elrod-Branti* analysis has been consistently rejected." *Id.* at 361 (citation omitted).

The *Riley* court's decision that, absent systemic unreliability, the official job description controls the analysis fosters clarity and efficiency. It avoids judicial intervention every time a new administration takes office and replaces staff. Relying on the job description also allows "[i]ncoming political leaders [to] . . . discover without protracted inquiry which jobs they can fill." *Id.* Finally, it avoids overly hamstringing a new administration based on the way the previous administration operated. *See id.*

In order to rely on the job description, it must be a "*reliable* description rather than something that has been manipulated by officials." *Id.* Reliability is determined by considering: "how the description was created; how it is updated and thus kept realistic . . .; [and] . . . how reliable, how authoritative, the description is." *Id.*

Turning to the instant case, the parties submitted the same job description for the Senior Humane Officer. Davis's exhibit 14 is identical to Ockomon's exhibit N. Accordingly, the Court shall consider this the relevant job description and must now determine whether the job description is reliable.

The parties agree that the City of Anderson hired the consulting firm, Waggoner, Irwin, Scheele & Associates ("WIS") to draft, review, and revise various job descriptions, including the position of Senior Humane Officer. WIS drafted the position description in 1988 and updated it in July 1990, January 1999, and June 2000. R. Kent Irwin, the President of WIS, stated in his affidavit that WIS "has conducted . . . job classification and compensation studies for cities and counties throughout Indiana using the Factor Evaluation System (FES)." Irwin Aff. ¶ 5. The FES "was developed by the U.S. Department of Labor in the early 1970's" and is "primarily used

by public employers." *Id.* The FES has also been "modified for use by employers throughout the United States, including the private sector." *Id.* The FES is applied through the following steps: (1) review the employer's compensation practices and develop a work project plan; (2) gather department and job information; (3) prepare job descriptions; (4) classify job descriptions; (5) conduct salary analysis; (6) prepare and submit report; and (7) conduct maintenance, facilitation, and consultation as requested. *Id.* ¶ 7.

When the City of Anderson hired WIS in 1988, it conducted the seven step FES application and created new job classifications and pay schedules. WIS was retained to maintain the system. *Id.* ¶ 8. In 2000, the City requested that WIS review and update all of the job descriptions, including that of the Senior Humane Officer. *Id.* ¶ 10. Based on WIS's review, the Senior Humane Officer received an upgraded classification, which resulted in a salary increase. *Id.* The Senior Humane Officer position has not been revised or modified since 2000. *Id.* ¶ 13.

Based on the *Riley* factors – "how the description was created; how it is updated and thus kept realistic . . .; [and] . . . how reliable, how authoritative, the description is," *Riley*, 425 F.3d at 361 – the Senior Humane Officer's job description is indeed reliable. The job description was created using nationally-recognized standards and practices. The description has been updated three times in twenty years, most recently in 2000. Like the drafting phase, the updating phase was conducted via an objective procedure. There is simply no evidence that any City official tinkered with the job description. *See id.* The description is reliable and authoritative.

Davis would have the Court believe that the City's failure to formally adopt the job description, thus giving it force of law, renders it inherently unreliable. This ignores *Riley*. A public job description does not have to have force of law in order to be official, authentic, or

8

reliable. Further, just because Davis contends that his duties did not correspond to those listed in the job description does not render the job description inherently unreliable. The "focus is on the 'inherent powers' of the office, not what any individual officeholder actually does." *Id*. (citation omitted). "The idea that job performance (rather than job description) should control *Elrod-Branti* analysis has been consistently rejected." *Id*. (citation omitted). Because the Senior Humane Officer's job description is reliable, the Court must now determine whether the position is a policymaking position or one which has a "confidential relationship with a superior," *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009), so that filling it with a political ally was not a violation of the First Amendment.

   The Seventh Circuit explained: "If a position 'authorizes either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation' it will be found to involve policymaking." *Allen v. Martin*, 460 F.3d 939, 944 (7th Cir. 2006) (quoting *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 355 (7th Cir. 2005)). "Additionally informative is the degree of discretion and responsibility exercised in the position." *Id.* at 944.

   In the instant case, the Senior Humane Officer's duties include: supervising and directing department personnel; preparing, submitting, and administering the department budget; overseeing issuance of permits and licenses; periodically formulating and implementing long-range plans for animal control; presenting policy and program initiatives to the Board of Public Works and Safety; and negotiating contracts for animal control services. *See* Davis ex. 14; Ockomon ex. N. These tasks indicate that the Senior Humane Officer is a policymaking position. There can certainly be "principled disagreement" about department budgets, long-

9

range plans for animal control policy, or program initiatives.  In addition, the Senior Humane Officer is charged with negotiating contracts for animal control services – this gives the officeholder a great deal of discretion and responsibility.  In *Riley*, the Seventh Circuit emphasized the "broad discretionary authority" exercised by the assistant warden of a prison as evidence that the assistant warden was a policymaking position.  *Riley*, 425 F.3d at 363.  In the instant case, the Senior Humane Officer's job description vests him or her with similar discretionary authority.  The position is one in which "party affiliation is an appropriate requirement for the effective performance of the . . . office."  *Branti*, 445 U.S. at 518.  Accordingly, the Defendants' motion for summary judgment is granted as to Plaintiff's federal claim.

All that remains is Davis's state law claim under the Indiana Wage Payment Statute.  The Court's jurisdiction over this claim is based upon 28 U.S.C. § 1367, which provides for the exercise of supplemental jurisdiction over a claim based upon state law that is closely related to the federal claim in a case.  However, "[w]hen the federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts."  *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008).  There are exceptions to that general rule, and the court should decide the merits of a supplemental state claim when: (1) the statute of limitations has run, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is "absolutely clear" how the state claims should be decided.  *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).  None of those exceptions apply here.  Dismissal without prejudice will avoid any statute

of limitations problems; none of this Court's resources have been expended on the state law claims, *see id.* ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"); and it does not appear to the Court that the proper resolution of the state law claims is so obvious as to overcome the presumption that remand is appropriate. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claim asserted in the Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED** as to the Plaintiff's federal claim. The Plaintiff's motion is **DENIED** with regard to the Plaintiff's federal claim. The Court declines to retain pendent jurisdiction over the Plaintiff's state law claim and therefore **DISMISSES IT WITHOUT PREJUDICE**.

SO ORDERED:   12/11/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Samuel Mark Adams
Micheal K. Sutherlin and Associates, PC
msutherlin@gmail.com

William R. Groth
Fillenwarth Dennerline Groth & Towe LLP
wgroth@fdgtlaborlaw.com

Michael K. Sutherlin
Michael K. Sutherlin & Associates, PC
msutherlin@gmail.com